# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00295 |
| ) | Judge Aleta A. Trauger |
| MATTHEW 25, INC., and JAMES ) | |
| FINCHUM, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

James Finchum has filed a Partial Motion to Dismiss (Docket No. 12), to which Jane Doe has filed a Response (Docket No. 15). Matthew 25, Inc., ("Matthew 25") has filed a Motion to Dismiss (Docket No. 18), to which Doe has filed a Response (Docket No. 24), and Matthew 25 has filed a Reply (Docket No. 28). Finchum has filed a Motion to Stay (Docket No. 30), to which Doe has filed a Response (Docket No. 36), and Finchum has filed a Reply (Docket No. 39). For the reasons set out herein, the Motions to Dismiss will be granted in part and denied in part, and the Motion to Stay will be denied.

## I. BACKGROUND[1]

Matthew 25 is a Nashville-based nonprofit that receives federal funding to provide training and education services. (Docket No. 1 ¶¶ 5–6.) Doe is an African-American woman and was, at all times relevant to this case, employed by Matthew 25. (*Id.* ¶ 4.) Finchum was hired as Matthew 25's executive director on March 3, 2016, a position from which he voluntarily resigned on January 11, 2018. (*Id.* ¶¶ 9, 25.) Finchum, who was the highest ranking executive at Matthew 25, persistently made comments to Doe regarding her physical appearance, telling her

---

[1] The facts in this Memorandum, except where otherwise indicated, are taken from Doe's Complaint and are taken as true for the purposes of the Motions to Dismiss.

that she reminded him of a black woman that he used to date and describing aspects of the sexual activities he had engaged in with that woman. (*Id.* ¶ 10.). Doe also describes Finchum "cornering [her] in his office with the door closed and physically touching her." (*Id.*) Finchum would also frequently call Doe's cell phone when she was not at work and ask her if she was in the bathroom or was taking a bath. Doe objected to Finchum about his behavior, but he continued. Throughout this time period, Finchum displayed an explosive temper and routinely yelled at and berated Doe and other female employees. (*Id.* ¶¶ 10–11, 18.)

In June 2016, Doe asked a member of Matthew 25's board of directors, Karen Baggett, to lunch at a restaurant. While there, Doe told Baggett that she was afraid of Finchum and asked Baggett for help. Baggett responded by telling Doe that "it would be ok," but Baggett took no corrective action. (*Id.* ¶ 12.)

In December 2016, Finchum called Doe into his office, began massaging her shoulders, placed her hand on his groin, exposed his penis to her, and masturbated to the point of ejaculation. (*Id.* ¶¶ 10, 14.) In April 2017, Finchum pressed his genitals into Doe's body from behind "and hunched his private parts against her buttocks until the front of his pants were wet." (*Id.* ¶¶ 10, 15.) In October 2017, Doe told her coworkers that Finchum had been harassing her, after which her coworkers began making an effort to prevent Doe from being left alone with Finchum. (*Id.* ¶ 16.)

On December 29, 2017, Doe attempted[2] to send an email to Finchum, which she copied to all members of the Matthew 25 board of directors:

> This letter [is] to inform you, Jim[,] to let you know that your inappropriate behavior toward me is unwanted and to inform all the Board Members:

---

[2] The e-mail address she used for Finchum was actually that of another James Finchum—the offending James Finchum's son. Members of the board of directors, however, apparently received the e-mail without any such complications. (Docket No. 1 ¶ 19 n.3.)

> I am being subjected to sexual comments and advances from Jim/CEO. The CEO has gone as far [as] to expose himself to me. These advances, comments and all sexual behaviors are unwelcomed.
>
> I don't want any problems. I just want this to stop, so I can do my job.

(*Id.* ¶ 19.) Doe's complaint prompted Matthew 25 to hire an outside consulting group, HR Compass, to investigate Finchum. (*Id.* ¶ 20.) While the investigation was ongoing, Finchum remained in his capacity as the highest ranking executive at Matthew 25. In order to avoid having to work alongside Finchum, Doe used accrued leave time for part of the period of the investigation. (*Id.* ¶ 22.) On January 8, 2018, Doe was interviewed by an employee of HR Compass. Doe detailed Finchum's actions toward her, and the HR Compass employee suggested that Doe file a police report. The next day, Doe filed a complaint regarding Finchum with the Metropolitan Nashville Police Department ("MNPD"). (*Id.* ¶¶ 23–24.) Two days later, Finchum resigned. (*Id.* ¶ 25.)

Doe claims to have suffered severe emotional injuries based on Finchum's actions, for which she has incurred medical expenses. In her Complaint, she states that she "asked to report her severe emotional injuries as a work-related injury and her request was denied." (*Id.* ¶ 27.) Matthew 25, however, has filed a Declaration of Hal E. Sauer, the president of its board of directors, explaining as follows:

> In February 2018, [Doe] asked me if her counseling expenses might be covered by workers compensation insurance. I did not know the answer, so I contacted Matthew 25's workers compensation insurance carrier on February 7, 2018. While I spoke with the insurance representative, he initiated a claim with the information that I was able to provide him over the phone, including [Doe's] contact information. I believed the insurer would contact [Doe] for additional information. . . . I informed [Doe] by email on February 8, 2018 that a workers compensation claim had been initiated on her behalf. . . . Since then, through her counsel, [Doe] has been provided with the claim number, the claim, and contact information for Matthew 25's workers compensation insurer.

(Docket No. 21 ¶¶ 4–6.) Doe has since provided a letter, dated June 21, 2018, from Matthew 25's workers' compensation carrier, Eastern Alliance Insurance Group, denying workers' compensation coverage for Doe's injuries because her "claim did not arise out of her employment." (Docket No. 32-1.)

On March 20, 2018, Doe filed her Complaint in this case. She pleads five counts: Count I is for common law assault and battery; Count II is for sexual harassment under the Tennessee Human Rights Act ("THRA"); Count III is for retaliation under the THRA; Count IV is for sex discrimination in a federally funded education program or activity, in violation of Title IX, 20 U.S.C. § 1681; and Count V is a claim for race discrimination, in violation of 42 U.S.C. § 1981, on the ground that Doe "is an African American and was singled out for harassment on the basis of her race and sex," while "White employees were not subjected to the type of assault and battery [Doe] was." (Docket No. 1 ¶¶ 32–56.)

On April 27, 2018, Finchum filed a Partial Motion to Dismiss directed at Counts I and V. (Docket No. 12.) On May 21, 2018, Matthew 25 filed a Partial Motion to Dismiss, or, in the Alternative, for Summary Judgment, directed at Counts I, III, and V. (Docket No. 18) On June 26, 2018, Finchum filed a Motion to Stay (Docket No. 30), asking the court to stay all matters in this case, as related to him, in light of Doe's having filed a criminal complaint against him and the possibility that there is an ongoing criminal investigation regarding his alleged wrongdoing.

## II. LEGAL STANDARD

### A. Motion to Stay

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes [on] its docket with economy of

4

Case 3:18-cv-00295   Document 40   Filed 07/30/18   Page 4 of 18 PageID #: 361

time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977)). Nevertheless, the Sixth Circuit has recognized that "[a] stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy." *Id.* (quoting *United States v. Ogbazion*, No. 3:12-cv-95, 2012 WL 4364306, at *1 (S.D. Ohio Sept. 24, 2012)). A district court considering whether to stay a civil case in light of an overlapping criminal case usually considers the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)).

**B. Motions to Dismiss**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

5

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

#### A. Motion to Stay in Light of Potential Criminal Proceedings

The simultaneous litigation of criminal charges and civil causes of action against the same person, for the same conduct, "may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings." *State Farm Life Ins. Co. v. Lindsey*, No. 2:14-CV-1902, 2015 WL 12991126, at *1 (S.D. Ohio June 29, 2015) (quoting *Claborn v. Ohio*, No. 2:11-cv-679, 2011 WL 5999040, at *1 (S.D. Ohio Nov. 30, 2011)). Those Fifth Amendment concerns, moreover, are not merely an issue for the defendant; the defendant's assertion of his Fifth Amendment rights may create complications and difficulties for the plaintiff and the court as well during the discovery process. *See Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (discussing issues related to the interrogatory process in civil cases where criminal charges are possible). A stay of discovery in the civil action also may be necessary to protect an ongoing investigation. *United States v. Any & All Assets of That Certain Bus. Known as Shane Co.*, 147 F.R.D. 99, 101 (M.D.N.C. 1992). Accordingly, where appropriate, courts stay civil proceedings, or aspects thereof, in light of ongoing criminal prosecutions or investigations. *See, e.g.*, *Receiver of Assets of Mid-Am. Energy, Inc. v. Coffman*, 719 F. Supp. 2d 884, 887 (M.D. Tenn. 2010).

6

The second of the four factors that courts typically consider when evaluating a motion such as Finchum's—the status of the criminal case, *see E.M.A. Nationwide,* 767 F.3d at 626–27—is an important one. Finchum has produced no evidence that charges against him are imminent or even that investigative activities are ongoing. He has produced one newspaper article, from March 22, 2018, in which an MNPD spokesperson claims that MNPD is "pursuing a separate and ongoing investigation related to" Doe's complaint. (Docket No. 39 at 8.) Even assuming that a newspaper article is an appropriate source to consider on a motion such as this, the spokesperson's vague statement tells the court little about the actual status of any investigation.

Based on the information currently before the court, Doe's interest in the timely consideration of her claims and the general public's interest in the expeditious administration of justice outweigh any speculative burdens on Finchum. *See E.M.A. Nationwide,* 767 F.3d at 626–27. That calculus, however, might change if Finchum produces evidence that there truly is a criminal investigation being pursued against him. On this record, the court cannot presume that.

**B. Motions to Dismiss**

1. Count I

Finchum argues that the court should dismiss Count I, for assault and battery, with regard to all actions prior to March 20, 2017, one year prior to the filing of the Complaint, as untimely. Doe concedes that common law assault claims based on any acts prior to March 2017 would be untimely and, therefore, the only specific incident in her Complaint pursuant to which she has raised a timely claim of assault is Finchum's alleged April 2017 unwanted pressing his genitals into her from behind until his pants became wet. (Docket No. 15 at 3.) Count I, therefore, will be dismissed, insofar as it purports to state a claim based on Finchum's actions prior to March 2017, including the December 2016 incident in Finchum's office.

Matthew 25 argues that Count I should be dismissed against it in its entirety, because Doe's sole avenue for relief against her employer under Tennessee law is through the state's workers' compensation statutes. Tennessee's workers' compensation statute provides that "the rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of the employee, the employee's representative, dependents or next of kin, at common law or otherwise, on account of the injury or death." Tenn. Code Ann. § 50-6-108(a). "Pursuant to this section, workers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury." *Valencia v. Freeland & Lemm Constr. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003) (citing *Liberty Mut. Ins. Co. v. Stevenson*, 368 S.W.2d 760 (Tenn. 1963)).

Tennessee courts have "created an exception to the exclusivity provision for intentional torts committed by an employer against an employee." *Id.* (citing *Mize v. Conagra, Inc.,* 734 S.W.2d 334, 336 (Tenn. Ct. App. 1987); *King v. Ross Coal Co.*, 684 S.W.2d 617, 620 (Tenn. Ct. App. 1984); *Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37, 40 (Tenn. Ct. App. 1982); *Cooper v. Queen*, 586 S.W.2d 830, 833 (Tenn. Ct. App. 1979)). The level of intent required to qualify for that exception, however, "is far more stringent than that for civil assault and battery." *Rodgers v. GCA Servs. Grp., Inc.*, No. W2012-01173-COA-R3CV, 2013 WL 543828, at *9 (Tenn. Ct. App. Feb. 13, 2013) (quoting *Forsythe v. Gibbs*, No. M2001-02055-COA-R3-CV, 2002 WL 1869415, at *4 (Tenn. Ct. App. Aug.15, 2002)). The Tennessee Supreme Court has held that it is not enough to show merely that the employer acted intentionally or was "substantially certain" that the injury would result; the plaintiff must show an "actual intent to injure the employee." *Valencia*, 108 S.W.3d at 243 (Tenn. 2003) (citing *King*, 684 S.W.2d at 619). Although Finchum's actions were plainly intentional, the Complaint does not allege that he

8

intended to inflict the psychological injuries that Doe has suffered. Therefore, while the exception for intentional injuries would permit a tort claim for some instances of assault, it would not do so here.

The exception for intentional injury, however, is not the only potential obstacle facing a defendant seeking to rely on the exclusive remedy provision to shield itself from liability for a work-related assault. As an initial matter, "[i]f an injury to an employee does not fall within the parameters of the [workers' compensation] law, then the exclusive remedies provision does not apply." *Forsythe*, 2002 WL 1869415, at *3; *see also Doe v. P.F. Chang's China Bistro Inc.*, No. W2016-01817-COA-R9-CV, 2017 WL 3741345, at *4 (Tenn. Ct. App. Aug. 29, 2017) (noting that, in order to prevail on an exclusive remedy defense, the defendant "bear[s] the burden of proof at trial to show by a preponderance of the evidence that the injury fell within the scope of the workers' compensation law") (citing *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 647 (Tenn. 2008); *Lunsford v. A.C. Lawrence Leather Co.*, 225 S.W.2d 66, 69 (Tenn. 1949)). Workers' compensation does not reach every injury merely because it took place in the workplace or involved coworkers: "To be compensable under Tennessee's Workers' Compensation Law, an injury must both arise out of the work *and* occur in the course of employment." *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 511 (Tenn. 2010) (emphasis added) (citing *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d at 225; *Blankenship v. Am. Ordnance Sys., LLS*, 164 S.W.3d 350, 353–54 (Tenn. 2005)). As the Tennessee Supreme Court has recognized, on-the-job violence presents a unique set of challenges with regard to applying the "arising out of" prong of that test. Tennessee courts, therefore, sort work-related assaults into three categories:

> (1) assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or

9

> private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.
>
> Assaults with an "inherent connection" to employment are compensable. Assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment are not compensable. Assaults resulting from a "neutral force" such as random assaults may or may not be compensable depending on the facts and circumstances of the employment.

*Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998) (internal citations omitted).

Applying the same principles, the Tennessee Supreme Court has held that, generally speaking, emotional injuries arising out of supervisor sexual harassment are not covered by workers' compensation law because those injuries "d[o] not arise out of [the injured employee's] employment," but rather "resulted from conduct that was purely personal between the plaintiff and her supervisor." *Anderson v. Save-A-Lot, Ltd.*, 989 S.W.2d 277, 281 (Tenn. 1999). Such a rule reflects Tennessee's policy that "sexual harassment [and associated claims] should not and cannot be recognized as a risk *inherent* in any work environment." *Vanover v. White*, No. 3:07-CV-15, 2008 WL 2713711, at *16 (E.D. Tenn. July 10, 2008) (quoting *Harman v. Moore's Quality Snack Foods, Inc.*, 815 S.W.2d 519, 527 (Tenn. Ct. App. 1991)) (emphasis added). Although sexual harassment may, as a factual matter, be common or even "endemic," Tennessee courts have rejected the premise that it presents an "inherent or necessary risk of employment" of the type contemplated by workers' compensation law. *Anderson*, 989 S.W.2d at 288 (quoting *Ford v. Revlon*, 734 P.2d 580, 591 (Ariz. 1987) (Feldman, J., concurring)). "Sexual harassment," the Tennessee Supreme Court approvingly cited a commentator as noting, "is not the equivalent of machinery breaking, objects falling, explosives exploding, tractors tipping or fingers getting caught in gears. . . . Although sexual harassment is commonplace, we need not accept it as a risk

inherent in the workplace. It can, unlike true industrial accidents, be eliminated." *Id.* at 289 (quoting Jane Byeff Korn, *The Fungible Woman and Other Myths of Sexual Harassmen*t, 67 Tul. L. Rev. 1363, 1385–86 (1993)). "[S]exual harassment," the Tennessee Supreme Court therefore concluded, "is completely outside the contemplation of the workers' compensation scheme." *Id.* at 290 (citation omitted).

"Since tort claims arising out of sexual harassment are not covered by the [Tennessee Workers' Compensation Act]," an injured employee's claims "are not covered by the exclusive-remedy provision." *Sims v. Meridian Sr. Living, LLC*, No. 2:12-CV-02898-JPM, 2012 WL 6115593, at *5 (W.D. Tenn. Dec. 10, 2012); *see also Vanover*, 2008 WL 2713711, at *16. To hold otherwise would be to consign such injuries to a no man's land between workers' compensation and tort—ineligible for workers' compensation but unprotected by the common law. There is nothing in Tennessee's case law or the language of the state's workers' compensation statutes to support such a rule.

Matthew 25 seeks to overcome the case law that Doe has identified by relying on *Williams v. Smith*, 435 S.W.2d 808, 812 (1968), in which the Tennessee Supreme Court applied the exclusive remedy provision to a claim based on a supervisor's assault of an employee in a shoe store. That case, however, antedates the precedents supporting Doe's position by decades. *Williams*, moreover, premised its conclusion on "the proposition that an employee who is injured by a third person at a time when he is acting in the course of his employment suffers an 'accident arising out of employment', which is compensable" under workers' compensation law. *Id.* at 809 (citing *Chamber of Commerce v. Turner*, 13 S.W.2d 318 (Tenn. 1929)). That principle, insofar as it was, at one time, the law of the State of Tennessee, has plainly been abrogated by the Tennessee Supreme Court's holding that some assaults are compensable under workers' compensation and some are not. *See Woods*, 967 S.W.2d at 771.

11

Doe has provided limited detail regarding the precise context of the alleged April 2017 assault. Based on the information provided, however, and construing the allegations in the light most favorable to Doe, she has alleged an assault that would fall outside the bounds of Tennessee workers' compensation law and, therefore, could permissibly give rise to a tort claim without running afoul of the exclusive remedy bar. Matthew 25's suggestion that the court, in the alternative, consider its motion under Rule 56 does nothing to change that analysis. The additional evidence that Matthew 25 has provided establishes that Doe did, in fact, have the opportunity to attempt to avail herself of the workers' compensation process. However, the determinative issue, under the exclusive remedy provision, is not whether she had the opportunity to seek workers' compensation but whether her injury, as a legal matter, is of the type reached by workers' compensation law. As alleged, it appears that it likely is not—and, indeed, Matthew 25's workers' compensation carrier appears to agree. The court, accordingly, will not dismiss the assault claim against Matthew 25 based on the April 2017 incident on that ground.

2. Count III

Matthew 25 argues that the court should dismiss Count III, for retaliation under the THRA, because Doe has not alleged retaliatory behavior on which such a claim could be premised. To establish a *prima facie* case of retaliation under the THRA, a plaintiff must show: (1) she engaged in protected activity; (2) the exercise of protected rights was known to the employer; (3) the employer took a materially adverse action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse action. *Goree v. United Parcel Serv.*, Inc., 490 S.W.3d 413, 434 (Tenn. Ct. App. 2015), *appeal denied* (Mar. 23, 2016).

12

Matthew 25 does not dispute that Doe's complaining about Finchum's behavior was a protected activity or that Matthew 25 was aware of that behavior. It argues, instead, that she cannot satisfy the third and fourth prongs, because she has not identified an adequate adverse action taken against her that bears a causal connection to her protected activity.

Doe identifies four alleged adverse actions that, she argues, are sufficient to support her retaliation claim: (1) she "has been ostracized" within Matthew 25; (2) "her job duties [were] reduced, including her role in implementing a federal grant through the U.S. Veterans Administration"; (3) she "utilized her accrued paid time off during part of the investigation period so that she would not have to work next to Finchum at the office"; and (4) "[a]s a result of the severe emotional distress she has endured from the unsafe work environment she experienced, [she] has taken an extended sick leave from her employment." (Docket No. 1 ¶¶ 22, 30–31.). The third and fourth examples—Doe's use of paid leave to avoid Finchum and her use of sick time due to her injuries—are not sufficient to form the basis of a retaliation claim, because neither is an action taken by her employer. The fact that Doe would feel the need to use accrued leave just to avoid Finchum and the fact that her psychological injuries ultimately required her to take sick leave are both unfortunate, but neither reflects an action by Matthew 25. Doe's use of sick leave was a consequence of the initial alleged harassment against her, not an instance of retaliation. Matthew 25's decision not to give Doe additional leave time to use during the investigation is simply the continuation of the status quo that would have prevailed if Doe had never engaged in a protected activity. After all, if she had not reported Finchum, Matthew 25 would not have given her extra leave time either. What remains, then, is whether Doe's being ostracized and having her duties reduced are a sufficient basis for her retaliation claim.

A materially adverse action, in the retaliation context, is one that is sufficiently severe that "it well might have 'dissuaded a reasonable worker from making or supporting a charge of

13

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *see Allen v. McPhee*, 240 S.W.3d 803, 820 (Tenn. 2007) (adopting *Burlington Northern* standard under THRA), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010); *see also Kessler v. Riccardi*, 363 F. App'x 350, 362 (6th Cir. 2010) (applying *Burlington Northern* test to THRA retaliation claim). A plaintiff must demonstrate "material adversity," meaning "significant" rather than "trivial" harm. *Burlington N.*, 548 U.S. at 68. Read in the light most favorable to Doe, her allegations are sufficient to defeat a motion to dismiss under that standard. The reduction or loss of one's role in a key project could be sufficient to dissuade a reasonable employee from complaining about her supervisor's behavior. Indeed, the Supreme Court has expressly held that a change in an employee's duties may, in some cases, be sufficient to support a retaliation claim. *Burlington N.*, 548 U.S. at 71 ("Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998))). While Doe's description of her being ostracized is vague, the court does not need to determine whether that allegation, alone, would support a retaliation claim, because it is sufficient when considered in conjunction with her reduction in duties. The court, accordingly, will not dismiss Doe's retaliation claim.

  3. Count V

  Finally, Finchum and Matthew 25 argue that the court should dismiss Doe's § 1981 claim on the ground that what she has described is sexual harassment, and § 1981 applies only to discrimination on the basis of race, not sex. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976) (noting that § 1981 is "in no way addressed to" the use of sex or religion as "categories of selectivity"). Doe does not dispute that § 1981 addresses only race discrimination or that she has

14

alleged a paradigmatic pattern of sexual harassment. She argues, however, that her claim is cognizable under § 1981 because she was singled out for sexual harassment based on her race. She points out that Finchum's initial targeting of her involved explicitly likening her to a black former sexual partner of his and that the white employees of Matthew 25 were not subject to the same harassment and assault. (Docket No. 1 ¶¶ 10, 56.) She argues that, while § 1981 admittedly does not address the issue of sexual harassment generally, Matthew 25's otherwise actionable race discrimination should not be removed from the ambit of the statute merely because the mechanism through which that racial discrimination was carried out was sexual in nature.

First enacted as § 1 of the Civil Rights Act of 1866, *see Runyon*, 427 U.S. at 168, and since amended, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[E]very appellate court that has examined the legislative history of [42 U.S.C. § 1981, as amended in 1991] has concluded that Congress intended the term 'contract' to encompass at-will employment" and that § 1981 therefore prohibits employment discrimination. *Rodrigues v. Motorworld Auto. Grp., Inc.*, No. 3:16-CV-1674, 2017 WL 1036477, at *4 (M.D. Pa. Mar. 17, 2017) (quoting *McClease v. R.R. Donnelly & Sons Co.*, 226 F. Supp. 2d 695, 701–02 (E.D. Pa. 2002) (citing *Skinner v. Maritz, Inc.*, 253 F.3d 337, 340 (8th Cir. 2001); *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 263–64 (2d Cir. 2000); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1019 (4th Cir. 1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1050 (5th Cir. 1998))). The Sixth Circuit has held that, because § 1981 prohibits employment discrimination on the basis of race, the statute, like Title VII of the Civil Rights Act of 1964 ("Title VII"), "provide[s] a cause of action for racial harassment in the work place." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657–58 (6th Cir. 1999) (citing *Holt v. Mich. Dep't of Corr.*, 974 F.2d 771, 772 (6th Cir. 1992)); *see also CBOCS*

15

*W., Inc. v. Humphries*, 553 U.S. 442, 450 (2008) (observing that 1991 amendment to § 1981 was intended to supersede holding that it did not provide a cause of action for, *inter alia*, harassment). Such a claim proceeds "under the same standards as claims of race discrimination brought under Title VII." *Jackson*, 191 F.3d at 658 (citing *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 418 (6th Cir. 1999); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1311 (6th Cir. 1989)).

A plaintiff may establish a violation of Title VII by proving that racially based harassment in the workplace created a hostile or abusive working environment. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). A plaintiff establishes a hostile work environment claim under Title VII by showing that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment based upon her protected status; (3) the harassment created a hostile work environment; and (4) the employer is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). In determining whether there is a hostile work environment, the court must consider the totality of the circumstances, including the frequency of the conduct, its severity, and the degree to which it interferes with work performance. *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993). A work environment is hostile if, from an objective and subjective perspective, the harassment is severe and pervasive enough that an "abusive" working environment is created. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). If the hostile work environment is created by a supervisor with authority over the complaining employee, the employer is vicariously liable for the hostile work environment, unless an exception applies. *Clark v. United Parcel Serv.*, 400 F.3d 341, 348 (6th Cir. 2005).

Doe has alleged that Finchum singled her out for unwanted sexual attention because she was African-American, which he confirmed by discussing his attention to her by comparing her

16

to a prior African-American sexual partner. Matthew 25 does not, at this stage, dispute that the resulting harassment was sufficiently severe and pervasive as to affect a term, condition, or privilege of employment, nor does Matthew 25 dispute any other factor in the *prima facie* case for harassment under Title VII. Matthew 25 argues only that Doe cannot proceed under § 1981, because Finchum's harassment was sexual in nature and § 1981 does not prohibit discrimination on the basis of sex.

Matthew 25's argument assumes that, because § 1981 does not outlaw sexual harassment in and of itself, then Finchum's sexual harassment must have been permissible under the statute. Matthew 25's conclusion, though, does not follow from its premise. Section 1981 prohibits racial discrimination in contracts, including sufficiently severe workplace racial harassment; it does not matter whether the means of discrimination and harassment are, in and of themselves, independently prohibited. For example, § 1981 does not prohibit using e-mail, but it prohibits using e-mail to engage in harassment on the basis of race. It does not prohibit one-on-one meetings, but it prohibits using one-on-one meetings as an opportunity to engage in harassment on the basis of race. And, although § 1981 admittedly does not prohibit unwanted sexual comments or contact, Matthew 25 has identified no reason to doubt that the law prohibits using unwanted sexual comments or contact to engage in harassment—and, therefore, discrimination— on the basis of race.[3] If Doe had been singled out based on her race and harassed in a manner that

---

[3] Matthew 25 likens this case to *Padilla Cintron v. Rossello Gonzalez*, 247 F. Supp. 2d 48, 53 (D.P.R. 2003), in which the district court dismissed a § 1981 claim brought by a plaintiff who had allegedly been sexually harassed, on the ground that the race-related allegations in her complaint amounted to only "a manner in which [the] alleged sexual harassment was manifested" rather than "a form of race based discrimination." *Id.* The only race-related allegation in *Padilla Cintron*, however, was that the plaintiff's harasser had "accused [her] of being a racist and [claimed that] that was the reason she would not go out with him." *Id.* at 52. Here, in contrast, Doe's race appears to have been central to her receiving Finchum's sexual attention in the first place. While Matthew 25 will certainly have the opportunity to argue and seek to establish that Finchum's racial comments were merely incidental to a purely sexual pattern of behavior, the allegations of the Complaint, read in the light most favorable to Doe, allege significantly more than

17

was not sexual, but was equally hostile, there would be little doubt that she had pled a claim under § 1981. The introduction of a sexual element does not negate her otherwise sufficient allegations. The court, accordingly, will not dismiss Doe's § 1981 claim.

## IV. CONCLUSION

For the foregoing reasons, Finchum's Partial Motion to Dismiss (Docket No. 12) and Matthew 25's Motion to Dismiss (Docket No. 18) will be granted in part and denied in part. Any claims for assault based on actions that occurred prior to March 20, 2017, will be dismissed. Finchum's Motion to Stay (Docket No. 30) will be denied without prejudice to refiling in light of future developments in any criminal investigation of or proceeding against Finchum.

An appropriate order will enter.

ENTER this 30th day of July 2018.

_____
ALETA A. TRAUGER
United States District Judge

---

merely a pattern of sexual harassment in which race was mentioned; they allege a pattern of racial harassment through sexual attention.